## Blankenship v. Enright
*[Cite as 2 AOA 584]*

Case No. 89AP-1214
*Franklin County, (10th)*
*Decided April 12, 1990*

R.C. 2744.01

*Jerry Weiner, Legal Services, Mr. Jerry Weiner and Mr. Jerome R. Doute, for appellant.*

*Mr. Michael Miller, Prosecuting Attorney, and Mr. Harland H. Hale, for appellees.*

WHITESIDE, J.

Plaintiff-appellant, Lewis C. Blankenship, appeals a judgment of the Franklin County Common Pleas Court dismissing his complaint with prejudice and raises the following assignment of error:

"That the trial court erred when it determined that the appellees performed a judicial or quasi-judicial governmental function and thus pursuant to Chapter 2744 of the Ohio Revised Code, were statutorily immune from civil prosecution for their negligent performance of such functions."

Plaintiff filed a complaint against defendants-appellees, Thomas Enright, Clerk of the Franklin County Common Pleas Court, and Franklin County, alleging that, due to defendants' negligence, plaintiff was arrested and incarcerated for a period of four days.

On June 13, 1985, a capias was issued for plaintiff's arrest by a domestic relations judge of the Franklin County Court of Common Pleas. However, on June 27, 1985, the same judge filed an entry with the clerk office withdrawing the capias. Plaintiff's complaint alleged that defendants negligently failed to enter the withdrawal in the record, which subsequently led to plaintiff's arrest March 4, 1988.

Defendants filed a motion for summary judgment basically contending that, pursuant to R.C. Chapter 2744, defendant Franklin County is protected by the doctrine of sovereign immunity, and defendant clerk of courts is protected by official immunity and that performance of the duties involved is a governmental function. In plaintiff's response to defendants' motion, plaintiff contends that defendants were performing ministerial duties and, therefore, subject to liability.

The trial court, in granting defendants' summary judgment motion, reasoned that defendants were performing "judicial functions" and, thus, protected by sovereign immunity pursuant to R.C. 2744.01(B) and (F). The trial court concluded that there were no genuine issues of material fact and that defendants were entitled to judgment as a matter of law.

Plaintiff contends that it was error for the trial court to grant defendants' motion for summary judgment. Civ. R. 56(C) provides in pertinent part:

"*** Summary judgment shall be rendered forthwith if the pleading *** show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ***"

Therefore, if reasonable minds can reach but one conclusion which is adverse to the nonmoving party, then summary judgment is appropriate and should be granted. See, also, *Norris* v. *Ohio Std. Oil Co.* (1982), 70 Ohio St. 2d 1.

The development and refinement of sovereign immunity for political subdivisions in Ohio has had a very tortuous path. In 1854, the Ohio Supreme Court held that municipal corporations were liable for injuries to third persons which resulted from the negligence of agents or employees acting under the

municipality's authority and direction in the construction of public improvements. See *Dayton v. Pease* (1854), 4 Ohio St. 80. In reaching this conclusion, the court recognized a distinction between acts of a municipality which involve a high degree of discretion and those which are merely carrying out the decisions, the court noting that "prosecution of a work thus authorized [by ordinance] was merely ministerial."

With regard to the first set of acts, described as "the accomplishment of purposes purely public," the *Pease* court concluded, at 99, that liability would not attach, reasoning that:

"*** [T]he immunity from responsibility to individuals is grounded upon the same public policy, that protects the judge or legislator in the exercise of his duties, and is designed to remove every obstruction to the free exercise of his judgment and discretion. ***"

Likewise, the court, at 100, predicated the imposition of liability upon the second set of acts on the following reasoning:

"*** [W]hen a municipal corporation undertakes to execute its own prescribed regulations, by constructing improvements for the especial interest or advantage of its own inhabitants, the authorities are all agreed that it is to be treated merely as a legal individual, and as such owing all the duties to private persons, and subject to all the liabilities that pertain to private corporations or individual citizens."

In other words, while a municipal corporation would not be held liable for the establishing of rules and regulations, liability could be imposed in the ministerial duty of enforcing those rules and regulations if negligently performed.

Following the *Pease* decision, the Supreme Court undertook a series of decisions which imposed liability upon a municipal corporation only where the negligent acts of its employees or agents could be shown to be proprietary in nature. Sovereign immunity remained intact for those functions which could be classified as governmental. See *Wooster* v. *Arbenz* (1927), 116 Ohio St. 281, and cases cited therein. See, also, *Broughton* v. *Cleveland* (1957), 167 Ohio St. 29. Thus, a governmental versus proprietary concept rather than a discretion versus ministerial concept was adopted.

The *Broughton* Court, quoting *Arbenz, supra,* defined the distinction between governmental and proprietary as follows, at 31,

which is essentially the same concept as stated in *Pease, supra:*

"In performing those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property, it is settled that the function is governmental, and if the municipality undertakes the performance of those functions, whether voluntarily or by legislative imposition, the municipality becomes an arm of sovereignty and a governmental agency and is entitled to that immunity from liability which is enjoyed by the state itself. If, on the other hand, there is no obligation on the part of the municipality to perform them, but it does in fact do so for the comfort and convenience of its citizens, for which the city is directly compensated by levying assessments upon property, or where it is indirectly benefitted by growth and prosperity of the city and its inhabitants, and the city has an election whether to do or omit to do those acts, the function is private and proprietary.'"

Using this definition as a dividing line between liability and nonliability, a series of decisions followed which may be described as confusing at best. See *Hack* v. *Salem* (1963), 174 Ohio St. 383; *Haas* v. *Akron* (1977), 51 Ohio St. 2d 135, and cases cited therein. In *Haas, supra,* Justice William Brown in his dissent used the following example as indicating the potential for illogical and inequitable results:

"*** This court's *ad hoc* approach to the governmental-proprietary doctrine and the general Assembly's enactment of R.C. 701.02 and 723.01 have, in the name of *limiting* immunity, placed the individual in the following situation. He may risk injury by walking down a street where a sewer is being *maintained* or by attending a program at a municipal auditorium or by unwittingly placing himself in the range of a policeman driving negligently and know that he may sue the municipality for his injuries, *Portsmouth* v. *Mitchell Manufacturing Co.* (1925), 113 Ohio St. 250. See *State, ex rel. White,* v. *Cleveland* (1932), 125 Ohio St. 230; R.C. 701.02. If, however, he walks down a street where a sewer is being *constructed,* or visits a municipal zoo, or, as in the instant cause, he unwittingly places himself in the range of a policeman who allegedly negligently shoots him, he has no recourse against the city. *Hutchinson* v. *Lakewood* (1932), 125 Ohio St. 100; *Crisafi* v. *Cleveland* (1959), 169 Ohio St. 137; *Gabris* v. *Blake* (1967), 9 Ohio St. 2d 71. ***"

The Ohio Supreme Court in *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, abrogated the judicially created sovereign immunity (which was not absolute to begin with), holding in paragraph two of the syllabus: "The defense of sovereign immunity is not available, in the absence of a statute providing immunity, to a municipal corporation ***."

In 1983, this holding was defined in *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, which held in paragraph one of the syllabus:

"The judicially created doctrine of municipal immunity is, within certain limits, abolished, thereby rendering municipal corporations subject to suit for damages by individuals injured by the negligence or wrongful acts or omission of their agents or employees whether such agents and employees are engaged in proprietary or governmental functions. *(Dayton* v. *Pease,* 4 Ohio St. 80, and its progeny overruled; *Haverlack* v. *Portage Homes, Inc.,* 2 Ohio St. 3d 26, followed and extended.)"

Furthermore, the court revised an exception to immunity that was created in *Pease, supra.* Although it overruled *Pease,* in paragraph two of the syllabus the court adopted a principal very similar to that of *Pease,* holding:

"Under this decision abolishing municipal immunity, no tort action will lie against a municipal corporation for those acts or omissions involving the exercise of a legislative or judicial function or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, municipalities will be held liable, the same as private corporations and persons, for the negligence of their employees and agents in the performance of the activities."

In so holding, the court was once again line-drawing between acts which could result in liability and ones that would not. Instead of distinguishing between governmental and proprietary, the distinction turned back to the difference between discretionary and nondiscretionary or ministerial functions. The *Enghauser* court recognized what the *Pease* court had recognized over 100 years earlier; namely, that certain acts of a municipality (those involving a high level of discretion) must remain immune from liability. Therefore, when we speak of the judicial abrogation of municipal

sovereign immunity, we must recognize that it is not complete. Acts which involve the exercise of a legislative or judicial function or the exercise of an executive function characterized by a high degree of discretion or judgment remained immune from liability.

Sovereign immunity with respect to counties has followed a different path than that for municipal corporations. In 1857, it was held that the immunity of a county is like that of the state and, thus, presumably the proprietary-governmental distinction was not made. See *Commissioners of Hamilton Co.* v. *Mighels* (1857), 7 Ohio St. 110, which overruled *Commissioners of Brown Co.* v. *Butt* (1826), 2 Ohio 349. *Mighels* was followed in *Schaffer* v. Bd. of Trustees (1960), 171 Ohio St. 228, the syllabus of which states: "In the absence of statutory authorization therefor, a county or its agencies are immune from suit for negligence."

Nevertheless, the abrogation of sovereign immunity was specifically extended to counties in 1984 by *Zents* v. *Bd. of Commrs.* (1984), 9 Ohio St. 3d 204, the syllabus of which states:

"No tort action will lie against a county for those acts or omissions involving the exercise of an executive or planning function or involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, a county will be held liable, the same as private corporations and persons, for the negligence of its employees and agents in the performance of their activities."

Contrary to plaintiff's contentions, the law regarding sovereign immunity for political subdivisions changed dramatically in 1985 with the enactment of R.C. Chapter 2744. Presumptively in response to the Supreme Court's complete abrogation of sovereign immunity, R.C. 2744.02(A)(1) sets forth the basic premise of the new law as follows:

"For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

Furthermore, R.C. 2744.01(F) defines "political subdivision" as specifically including

counties. Therefore, defendant Franklin County is a "political subdivision" for purposes of R.C. Chapter 2744.

R.C. 2744.02(B) sets forth the exceptions; that is, those instances when a political subdivision will be held liable for the negligent acts of its employees or agents. R.C. 2744.02(B)(2) is the one which plaintiff relies upon to hold defendants liable, as it provides:

"Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

Employees of a political subdivision are now totally immune pursuant to R.C. 2744.03(A)(6) unless one of the three listed exceptions apply, which are as follows:

"(6) *** the employee is immune from liability unless the following apply:

"(a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;

"(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

"(c) Liability is expressly imposed upon the employee by a section of the Revised Code."

R.C. 2744.01 (B) provides that "*** 'Employee' includes any elected or appointed official of a political subdivision." Accordingly, defendant clerk of courts is immune from liability even though he is not an officer specifically granted by R.C. 2744.03(A)(7).

In order for liability to attach to a political subdivision under R.C. 2744.02(B)(2), the negligent act must be characterized as "proprietary." R.C. 2744.01(G)(1) defines "proprietary as follows:

"'Proprietary function' means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies all of the following:

"(a) The function is not one described in division (C)(1) (a) or (b) of this section and is not one specified in division (C)(2) of this section;

"(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.

"(2) A 'proprietary function' includes, but is not limited to, the following:

"(a) The operation of a hospital by one or more political subdivisions;

"(b) The design, construction, reconstruction, renovation, repair, maintenance, and operation of a public cemetery other than a township cemetery;

"(c) The establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, and a municipal corporation water supply system;

"(d) The maintenance, destruction, operation, and upkeep of a sewer system;

"(e) The operation and control of a public stadium, auditorium, civil or social center, exhibition hall, arts and crafts center, band or orchestra, or off-street parking facility."

Once again, a distinction has been drawn between governmental and proprietary functions. However, unlike the case law preceding this statute, not all governmental functions are immune and not all proprietary functions are actionable, and the distinction applies to all political subdivisions. In fact, under the statute, a political subdivision may be afforded greater immunity than afforded under court-created common-law immunity prior to its abrogation in *Haverlack, supra.* See R.C. 2744.02(B), which sets forth the potential liability for political subdivisions for both governmental and proprietary acts.

An additional difference between the present common law and the new statute is the absence in R.C. Chapter 2744 of any provision regarding liability for purely ministerial acts. As stated previously, prior to the enactment of R.C. Chapter 2744, political subdivisions were held liable for the negligent acts of the agents or employees in carrying out their duties. See the syllabus of *Zents, supra.* The only provision of the new law which even remotely addresses this issue is contained in R.C. 2744.03(A) (3). However, this provision is applicable only after liability has been established as it acts as a defense providing:

"The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."

In effect, the new statutory law abolished one of the oldest recognized claims against a political subdivision: liability for ministerial acts negligently performed by employees of the

political subdivision and relieved the employee from liability for such acts as well. Under recent common law, liability would attach either to the political subdivision or the employee, or both, for negligence in performing ministerial acts. Under R.C. Chapter 2744, neither is liable absent some special circumstance.

With these provisions in mind, we turn to the determination of whether defendant Franklin County's employees or agents are engaged in a "proprietary act" when they failed to withdraw the capias from plaintiff's file which subsequently led to plaintiff's unfortunate arrest. Only if that act is properly classified as "proprietary," pursuant to R.C. 2744.02(B)(2), can defendant Franklin County be liable making summary judgment inappropriate.

However, the facts even as alleged in the complaint do not support such a conclusion. The facts alleged fall within none of the definitions of "proprietary" contained in R.C. 2744.01(A)(6). The acts or functions contained within that section are akin to former case law definitions of proprietary acts which gave rise to municipal liability. These acts are performed by the political subdivision under no obligation to perform them. They are performed solely for the benefit of the political subdivision's own citizens, not the citizens of the entire state. See *Hack, supra;* and *Broughton, supra.*

Even though that section specifically states that it is not all-inclusive, the negligent omission of the clerk of courts does not fit within the parameters of the "proprietary" acts. The act of recording a capias and docketing it accordingly is properly classified (under either the common or the statutory law) as being governmental. R.C. 1907.20(A) provides that accurately keeping such records is a duty imposed upon the clerk of courts. Thus, pursuant to R.C. 2744.01(C)(1)(a), this is clearly a "governmental" function.

Therefore, pursuant to R.C. 2744.02, plaintiff, as a matter of law, does not have a claim for relief against defendant Franklin County. The act complained of not being properly classified as a "proprietary" act under R.C. 2744.01(G), there can be no liability pursuant to R.C. 2744.02(B)(2). Furthermore, as set forth previously, agents and employees are absolutely immune for the negligent acts or omissions which are *not* manifestly outside the scope of their employment or done with malicious purpose or in a reckless manner. See R.C. 2744.03(A)(6).

Plaintiff contends that, while the clerk of court's function in this case is properly classified as "governmental," the ministerial exception to immunity is applicable. Plaintiff relies upon this court's decision in *Dalton* v. *Hysell* (1978), 56 Ohio App. 2d 109, where we held that "immunity does not apply to the negligent omission of the clerk of courts to perform a ministerial act." *Dalton* pertained only to the individual liability of the clerk of courts.

If plaintiff's cause of action had arisen prior to November 20, 1985 (the effective date of R.C. Chapter 2744), then his analysis regarding ministerial acts would be correct. However, applying the statutes, we find no such provision. At common law the negligent performance of a ministerial act by a public officer or employee was actionable and no immunity applied. Under R.C. Chapter 2744, however, there is no provision imposing liability for governmental *ministerial* acts. *Dalton* is no longer applicable.

The inapplicability of *Dalton* is mandated by R.C. 2744.03(A)(6), which states that employees of political subdivisions are completely immune for the negligent performance of ministerial duties. *Dalton* was an action against the clerk of courts for negligently performing his duties, not the county itself. Now, because of the immunity granted by R.C. 2744.03(A)(6), liability no longer exists.

There is no question but that defendant Enright and his staff were acting in the scope of their employment when the capias was negligently not withdrawn. Furthermore, there is no evidence to suggest that they acted recklessly or with malicious purpose. Therefore, the only potential action for plaintiff would be against Franklin County. See R.C. 2744.03(A)(6). As we have already determined, there is no liability in the present case. While defendant Franklin County may have negligently failed to withdraw the capias, this act is not actionable under R.C. Chapter 2744. The conduct of the Franklin County employees cannot be accurately characterized as a "proprietary" act, the negligent performance of which would result in liability against the political subdivision. See R.C. 2744.01(A)(6) and R.C. 2744.02(B)(2). Accordingly, there are no genuine issues of material fact, and defendants are entitled to judgment as a matter of law. Plaintiff's sole assignment of error is not well-taken.

For the foregoing reasons, plaintiff's assignment of error is overruled, and the

judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BRYANT and MARTIN, JJ., Concur

MARTIN, J., of the Carroll County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.